[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a February 16, 1990 decision of the Personnel Appeal Board (the Board/Appellee) upholding the Department of Corrections' (the Department) dismissal of William P. Morinville (Appellant) from employment.
On October 7, 1988, after an administrative hearing, the Assistant Director of Management Services for the Department, Donald Taylor, discharged the appellant from his accounting position having found the appellant guilty of `theft'. (Appellee's exhibit "C").
The appellant was charged on June 3, 1988 with larceny of materials from a construction site in Seekonk, Massachusetts. On October 4, 1988 the Director of the Department, John J. Moran, sent a letter to appellant informing him that "as a result of an administrative hearing held on October 4, 1988 at 10:00 a.m. . . . it [was] the decision of the Department of Corrections to terminate [his] employment as Accountant within the Division of the office of the Director, Adult Services Section, Business Office Unit." (Appellee's exhibit "B"). The letter stated that the termination was effective as of October 4, 1988 at 4:00 p.m. The appellant was present at the administrative hearing and was offered the opportunity to be represented by counsel, to present evidence in his own behalf, and to examine all witnesses. (Appellee's exhibit "C"). The appellant chose to be represented by Kenneth Rivard, the Grievance Chairman for the Rhode Island Brotherhood of Correctional Officers.
After hearing the testimony of two Seekonk police officers who were present at the construction site the hearing officer determined that the appellant was guilty of theft. The hearing officer also noted that appellee's position as an agent within the Criminal Justice System required an "extremely high degree of honesty and integrity on every level in order to maintain public trust and confidence." (Appellee's exhibit "C"). After a thorough and conscientious examination of the evidence presented at the hearing and the applicable code of ethics and conduct the hearing officer concluded that the Department of Corrections had no alternative but to terminate the appellant. As the result of appellant's appeal of his dismissal, a hearing was held before the Personnel Appeal Board on October 5, 1989. At that time appellant's attorney objected to the introduction of the October 4, 1988 letter from the Department of Corrections notifying appellant of his termination. Counsel maintained that because appellant did not receive the letter until October 5 or 6th the notice was non-compliant with the statutory requirement of notice on or before the effective date of dismissal.[1]
Counsel for both parties agreed that the Personnel Appeal Board could rest its decision on memoranda, rather than the presentation of testimony or evidence. (TR 14-15). After considering the memoranda the Personnel Appeal Board denied and dismissed the appeal, rejecting appellant's arguments that he was not accorded due process at the October 4, 1988 administrative hearing and that the State had violated the notification requirement in R.I.G.L. 36-4-38.
The appellant has raised the same issues in this Court (in fact has filed the same brief filed with the Personnel Appeal Board) as he raised before the Personnel Appeal Board.
He argues that he is entitled to reinstatement because the Department did not comply with the notice provision of R.I.G.L.36-4-38. Yet appellant attended the October 4, 1988 hearing and filed a timely appeal to the Personnel Appeal Board. An obvious objective of notification "on or before" the effective date of termination must be to promptly inform any affected employee of an adverse decision in order that he or she may pursue an appeal within the statutory time frame. In this case it is clear that appellant's due process rights were observed at each stage of the proceedings. It is undisputed that on October 4, 1988, appellant did not have in his possession the termination letter of the same date. However, by his own admission, appellant was advised in a September 26, 1988 letter from the Department of Corrections that an administrative hearing regarding the larceny allegation would be held on October 4, 1988 at 10:00 a.m. Appellant was not only aware that a hearing would take place, but participated in it to the extent he deemed appropriate. Even if one were to conclude that the notice provision of R.I.G.L. 36-4-38 was violated, and this Court declines to so find, no prejudice inured to the appellant.
The appellant also complains that the hearing of October 4, 1988 (as well as the hearing before the Personnel Appeal Board) was a "sham" and a "disgrace". These remarks are totally unjustified. A review of the Department of Corrections' October 7, 1988 decision reveals that Assistant Director Donald Taylor thoroughly evaluated the evidence presented to support the charge of larceny. He specifically found, among other things, that according to the credible testimony of the arresting officer (Michelle A. Jones, Seekonk Police Department) the appellant, on June 3, 1988, at 11:30 p.m. was driving a truck containing stolen building materials. The officer noted that the truck containing 4 steel beams had no lights on as it left the construction site. After she advised him of his constitutional rights appellant said that he had permission from a construction company employee to pick up the beams, but he refused to supply the name of that employee.
When Officer Jones appeared at the Personnel Appeal Board hearing and was available for cross-examination appellant's counsel unambiguously agreed to allow the Board to base its decision on the briefs alone. Referring to Officer Jones counsel said, "As far as this witness is concerned, I would object if she tried to testify today because it's not necessary." He thereby waived any opportunity for cross-examination and for the presentation of any evidence on his client's behalf. (TR 13).
Appellant maintains that the evidence pertaining to the larceny was "circumstantial" and that absent a judicial determination of guilt his employment status cannot be adversely affected. As the Personnel Appeal Board noted ". . . this argument presupposes that the Department has no independent authority to dismiss an employee short of an actual conviction for a crime". (PAB decision, P. 2). The Board, as well as the Department of Corrections, had direct, uncontradicted evidence that on June 3, 1988 appellant committed a theft. Both the Department and the Personnel Appeal Board acted appropriately and responsibly in enforcing appellant's termination from employment. Furthermore both the Department of Corrections and the Personnel Appeal Board adhered to the statutory scheme and afforded to the appellant all applicable due process rights.[2]
Based on the foregoing reasons, this Court affirms the decision of the Personnel Appeal Board denying appellant's appeal from the Department of Corrections' decision to terminate his employment. Counsel will prepare and submit an appropriate order for entry.
[1] R.I.G.L. 36-4-38 authorizes an appointing authority to dismiss a classified employee with permanent status whenever he or she considers the good of the service to be served thereby, stated in writing, with full and sufficient reason, and filed with the personnel administrator. The appointing authority is required to give written notice and reason therefor to the employee on or before the effective date [of the dismissal].
[2] The appellant also argues that impertinent information regarding his past disciplinary record was presented during the hearings. Although the hearing officer referred to citations in appellant's personnel file dating back to 1974 for tardiness, insubordination, unauthorized absences and violations of procedure and policy, this is inconsequential. The hearing officer found, independently of this information, that the appellant was guilty of larceny. The Personnel Appeal Board noted in its decision (P. 2) that previous conflicts between the appellant and the administration were discussed at the hearing but that it would take no note of those conflicts.